UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZILLOW, INC.,<br><br>            Plaintiff,<br><br>            v.<br><br>TRULIA, INC.,<br><br>           Defendant. | CASE NO. C12-1549JLR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR A STAY |

## I.   INTRODUCTION

Plaintiff Zillow, Inc., ("Zillow") has sued Defendant Trulia, Inc., ("Trulia") for infringement of United States Patent No. 7,970,674 B2 (the "'674 Patent"). (*See* Compl. (Dkt. # 1).) Before the court is Defendant Trulia, Inc.'s ("Trulia") motion for a stay in the litigation pursuant to section 18(b) of the Leahy-Smith America Invents Act ("AIA") pending the Patent Trial and Appeal Board's ("PTAB") review of the validity of the '674 Patent. (*See* Mot. (Dkt. # 47).) The court has considered the motion, all submissions

ORDER- 1

filed in support and opposition thereto, the applicable law, and the balance of the record. Being fully advised, the court GRANTS Trulia's motion.

## II.  BACKGROUND

### A.  The Litigation

Since 2006, Zillow has operated a real estate information website, Zillow.com. (Compl. ¶ 7.) Zillow's website offers users a "Zestimate" home valuation service. (*Id.*) Zillow's Zestimate permits homeowners and real estate professionals to update automatic valuations of homes with additional facts and information to refine the valuation. (*Id.*)

Trulia offers another real estate information website, Truilia.com. (*Id.* ¶ 9.) On September 7, 2011, Trulia announced that it too would provide automatic home valuations and it too would use input from homeowners to refine those valuations. (*Id.*) Trulia calls its refined home valuation a "Trulia Estimate." (*See id.* ¶ 10.) On September 12, 2012, a little more than one year after Trulia launched the feature known as the "Trulia Estimate," Zillow filed suit against Trulia for infringement of the '674 Patent. (*See generally* Compl.) Zillow asserts claims 2, 5, 15-25, and 40 of the '674 Patent. (Shanberg Decl. (Dkt. # 35) ¶ 4.)

### B.  The Extent of Discovery

The parties have engaged in some written discovery. They have exchanged several sets of written discovery requests (Schmidt Decl. (Dkt. # 48) ¶ 3-5, 9-10), and they have produced 128,774 pages of documents. (Talge Decl. (Dkt. ## 51 (sealed), 53 (redacted)) ¶ 16.) At the time of the filing of Trulia's motion to stay, neither party had scheduled or taken a deposition in the litigation. (Schmidt Decl. ¶ 12.) The day after

Trulia filed its present motion to stay, however, Zillow served notice of a Federal Rule of Civil Procedure 30(b)(6) deposition upon Trulia, scheduling the deposition for October 15, 2013.  (*See* Talge Decl. ¶15.)  The parties have also retained experts.  (*See id.* ¶ 17.)  Discovery cut-off is not until March 14, 2014.  (Sched. Order (Dkt. # 28) at 2.)

In addition, the parties have exchanged infringement, noninfringement, and invalidity contentions.  (*Id.* ¶¶ 14, 18; Schmidt Decl. ¶¶ 6-7.)  The parties have also exchanged their proposed claim terms for construction, preliminary proposed claim constructions, and extrinsic evidence.  (Talge Decl. ¶ 19; Schmidt Decl. ¶¶ 8, 11.)  On September 25, 2013, the parties filed their joint claim construction and prehearing statement.  (Joint Statement (Dkt. # 55).)  The parties' claim construction hearing, however, is not scheduled until December 6, 2013, and neither party has filed any claim construction briefing or memoranda.  (*See* Sched. Ord. at 1.)

**C.  Motions Practice**

The parties have also engaged in motions practice.  On December 19, 2012, Trulia filed a motion to dismiss the complaint on the ground that the '674 patent fails to satisfy the eligibility requirements of 35 U.S.C. § 101.  (12/19/12 Mot. (Dkt. # 19).)  In their briefing on the motion, both parties acknowledged the Federal Circuit's then upcoming rehearing en banc in *CLS Bank International v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341 (Fed. Cir. 2012).  (12/19/12 Mot. at 12; 1/21/13 Resp. (Dkt. # 22) at 18-19; Mot. at 2; Resp. (Dkt. # 38) at 3.)  On February 15, 2013, the court issued an order deferring ruling "on section 101 issues [until] after the Federal Circuit's decision in *CLS Bank*." (2/15/12 Order at 8.)  The court expressed the hope that the Federal Circuit's en banc opinion

"would be extraordinarily helpful to the court in this case" and "particularly useful in resolving this motion." (*Id.* at 4-5.)

On May 10, 2013, the Federal Circuit issued its en banc decision in *CLS Bank*, affirming the patent ineligibility of the method, computer-readable medium, and system claims at issue in a one-paragraph *per curiam* decision. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1273 (Fed. Cir. 2013). On June 17, 2013, in accord with the court's February 15, 2013, order, Trulia filed its renewed motion to dismiss (or in the alternative for summary judgment) asserting once again that the claims at issue in the '674 Patent were directed to nothing more than an abstract idea, and therefore were patent-ineligible subject matter under 35 U.S.C. § 101. (*See generally* 6/17/13 Mot. (Dkt. # 34).)

Although the court had hoped that the Federal Circuit's en banc decision in *CLS Bank* would provide guidance with respect to the present dispute, its hopes were not to be realized. Instead, the Federal Circuit's en banc panel released seven different opinions— none of which garnered majority support. *See id.* at 1273-1289 (Lourie, J. concurring); *id.* at 1292-1305, 1311-13 (Rader, C.J. concurring in part and dissenting in part). Accordingly, on September 6, 2013, the court issued an order denying Trulia's motion without prejudice to re-filing following the court's ruling on claims construction. (*See generally* 9/6/13 Order (Dkt. # 46).)

  **D.  *Inter Partes* Reveiw**

Meanwhile, on October 26, 2012, a little more than one month after Zillow had filed suit against Trulia, non-party, MicroStrategy, Inc. ("MicroStrategy") filed a petition

at the PTO for *inter partes* review of the '674 Patent, and Zillow filed its preliminary response on February 15, 2013. (Schmidt Decl. Exs. D, E.) The PTO granted MicroStrategy's petition on April 2, 2013, instituting trial on claims 2, 5-17, and 26-40, which partially overlap with Zillow's asserted claims in this lawsuit, claims 2, 5, 15-25, and 40. (*Id.* Ex. F.) By statute, the PTO must complete this *inter partes* review by April 2, 2014. *See* 35 U.S.C. § 316(a)(11). MicroStrategy's *inter partes* review has resulted in briefing and a deposition of Zillow's expert witness, all of which becomes part of the prosecution history of the '674 Patent. (*See* Schmidt Decl. ¶ 13.)

### E.  Trulia's CBM Review and Motion to Stay

On September 11, 2013, Trulia filed its Petition for Covered Business Method ("CBM") Patent Review of all asserted claims on the '674 Patent before the United States Patent and Trademark Office ("PTO") pursuant to 35 U.S.C § 321 and section 18 of the AIA under the Transitional Program for Covered Business Method Patents. (*See* Schmidt Decl. Ex. A.) Section 18 of the AIA created a new transitional program authorizing persons or entities which have been sued for infringing a CBM patent to seek "post-grant review" from the PTO regarding the validity of the patent. AIA § 18(a)(1) P.L. 112-29, 125 Stat. 284, 329-30 (2011). Although the AIA was signed into law on September 16, 2011, the CBM review component was not implemented until September 16, 2012. *Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Ill.*, Nos. 1:10CV01370, 1:11CV00082, 1:12CV01068, 1:12CV01070, 2013 WL 1662952, at *2 (N.D. Ohio Apr. 17, 2013) (citing AIA § 18(a)(1), P.L. 112-29, 125 Stat. 284, 329 (2011); 37 C.F.R. § 42.300). CBM review is limited to defendants who have been sued for patent infringement of

ORDER- 5

"covered business method patents," which are patents that claim "a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service." AIA § 18(d)(1); 35 C.F.R. § 42.301(a). Trulia's CBM petition covers all of the claims asserted in this litigation. (Schmidt Decl. Ex. A.) The PTAB must determine whether to institute a trial concerning Trulia's petition by March 11, 2014, and should issue a final decision as to the validity of the '674 patent within one year from the date of the trial. (*See id.* Ex. I.)

On September 12, 2103, Trulia filed its present motion for a stay with this court pending the Patent Trial and Appeal Baord's ("PTAB") review of the validity of the '674 Patent pursuant to the § 18 of the AIA. The court now considers that motion.

## III.   ANALYSIS

Trulia's motion to stay is governed by the AIA, which permits a party to seek a stay of a patent infringement action in federal district court where a "transitional proceeding for that patent" has been instituted. AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331. The AIA asks district courts to decide whether a stay should be granted based on a four-factor test: (1) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties

and on the court.  *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *2 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011)).

The four-part test establish by the AIA resembles the one that courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the PTO. *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. 2013).  The primary difference between this test and the one employed by courts in the ordinary patent reexamination context is the inclusion of the fourth factor regarding whether a stay will reduce the burden of litigation.  *Id.*  There is no indication that Congress intended to alter the way in which district courts assess the first three factors. *Id.* at 490, n.6.  However, the fourth factor was added in order to ease the movant's task in demonstrating the need for a stay.  *Id.* at 489-90.  Indeed, the four-factor test was designed to increase the likelihood that the court will grant a stay when a party initiates a transitional CBM review, as opposed to an ordinary PTO reexamination.[1]  *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *3.  The court will consider each factor in turn.

---

[1] Some federal district courts, which have applied the new four-factor test, have considered remarks made by Senator Charles Schumer, who was one of the sponsors of section 18 of the AIA.  *See, e.g.*, *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 490, n.4; *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *2-3.  For example, Senator Schumer stated that the amendment was "designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents" and "places a heavy thumb on the scale in favor of a stay being granted."  *Id.* at *3 (citing 157 Cong. Rec. S1363).  With respect to the new four-factor test, Senator Schumer stated that  "[t]he amendment employs the [four-factor] test . . . because this test properly emphasizes a fourth factor that is often ignored by the courts:  'whether a stay will reduce the burden of litigation on the parties and on the court.'"  *Id.* (citing 157 Cong. Rec. S1364).  He also noted that "[t]oo many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two for a at the same time," which is "unacceptable, and . . . contrary to the fundamental purpose of the . . . amendment to provide a cost-efficient alternative to litigation."  *Id.*

### A. Issue Simplification

First, the court considers whether a stay will simplify the issues or streamline the trial. *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *2 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011)). Trulia asserts that there is a high likelihood that the PTO will cancel or significantly amend the asserted claims of the '674 Patent, and that such an outcome will simplify this litigation. (Mot. at 6-9.) Trulia cites to statistics that indicate that 42% of *inter partes* reexaminations result in the cancellation of all claims, 47% of such reexaminations result in claim changes, and only 11% result in confirmation of all claims. (Schmidt Decl. Ex. M.) As a result, Trulia argues that there is a high probability that a stay will simplify the issues for trial of this case. (Mot. at 7.)

Indeed, the Federal Circuit has recently held under the reexamination statute that "if a claim is cancelled or amended to cure invalidity [by the PTO], the patentee's cause of action is extinguished and the suit fails." *Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). Further, if the claim is confirmed, "the petitioner in a [CBM review] may not assert . . . that the claim is invalid on any ground that the petitioner raised during the transitional proceeding." AIA § 18(a)(1)(D). Thus, Trulia asserts that if the PTO cancels or amends some of the claims at issue here as a result of the CBM reexamination, there is high probability that all or a portion of the suit will be dismissed or settled without further involvement of the court. (Mot. at 7.)

Finally, even if the litigation continues following CBM review, the court will proceed with the benefit of the PTO's particular expertise and the record of the CBM review to aid the court in future claim construction. (Mot. at 8.) Additional prosecution

history created during reexamination could inform or alter the meaning of claim terms. *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("[T]hrough statement made during prosecution or reexamination , an applicant . . . may commit to a particular meaning for a patent term, which meaning is then binding in litigation.").

Zillow counters that CBM review is unlikely to simplify issues for trial because Trulia has submitted only seven pieces of prior art to its CBM petition, although it has raised 97 pieces of prior art in this litigation. (Talge Decl. ¶ 14.) Thus, if the claims are affirmed following CBM review, Trulia will be estopped from raising only seven out of 97 pieces of prior art. (Resp. (Dkt. ## 50 (sealed), 52 (redacted)) at 9.) This argument ignores the possibility that some or all of the claims may be cancelled or amended. Further, even if only seven pieces of prior art are excluded from consideration in this litigation, there will still be some amount of simplification for the court and the parties.

Zillow also notes that the statistics relied upon by Trulia are applicable to *inter partes* review, not CBM review. The court is aware of the difference between *inter partes* reexamination and CBM review. The court also recognizes that any assessment of the likelihood that patent claims will or will not be cancelled or amended during a future administrative proceeding is inherently speculative. *See Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 491, n.8. Courts, however, have been called upon to consider such forecasting with respect to the "simplification" factor. *Id.* CBM review is so new that no PTO statistics exist for it yet. *Inter partes* reexamination is the proceeding most similar to CBM review, however, and other courts have relied upon these same statistics when

ORDER- 9

considering stays pending CBM review. *See, e.g.*, *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 491, n.7; *Progressive Cas. Ins. Co.*, 2013 WL 1662952 at *4.[2] Thus, the court considers these statistics to be the best available indicator at this time of the likelihood of amendment or cancellation of claims in a CBM review, and Zillow has not provided any countervailing or alternative evidence.[3] The court concludes that a stay in this proceeding pending CBM review opens a significant possibility that the issues will be simplified and streamlined for trial, and therefore, the court finds that this factor weighs in favor of a stay.

---

[2] Zillow cites to *SenoRx, inc. v. Hologic, Inc.*, No. 12–173–LPS–CJB, 2013 WL 144255, at *4 (D. Del. 2013) for the proposition that some courts have found Trulia's statistics unpersuasive. (Resp. at 10.) Although the *SenoRx* court ultimately denied the defendant's motion for a stay pending an *inter partes* reexamination, *id.* at *9, it relied in part upon the same statistics cited by Trulio to find that reexamination did have the potential to simplify the issues for trial. *Id.* at *5 ("After considering the statistical likelihood that reexamination will result in an altered claim landscape on the one hand, and the lack of complete (though not insignificant) overlap of the issues to be addressed in the PTO and in the District Court on the other, the Court finds this factor [simplification of the issues for trial] to weigh in favor of a stay, though not strongly so.").

[3] Zillow also notes that, although Trulia has applied for CBM review, the PTAB has not yet granted it. (Resp. at 10.) Whether CBM review should be granted, however, is an issue for the PTAB to evaluate and not for this court. The statutorily required stay analysis set forth in § 18(b) of the AIA is triggered by a party's petition for post-grant review and not upon the PTAB's institution of such review. *See Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 490, n.5 ("Since the PTO has recognized that 'the [CBM review] *proceedings* begin with the filing of a petition,' the court finds that the relevant stay provisions apply when the petition is first filed.") (italics in original) (citing Office Patent Trial Practice Guide, 77 Fed. Reg. 48757 (Aug. 14, 2012). Thus, the court assesses whether to issue a stay even if the PTAB has not yet determined whether to grant CBM review. *See Sightsound Techs., LLC v. Apple, Inc.*, No. 11-1292, 2013 WL 2457284, at *3 (W.D. Pa. June 6, 2013) ("[T]he relevant stay provisions of the AIA apply when the petition for review is filed, and not when the PTAB institutes such review."). Obviously, if a motion to stay litigation is brought after the PTAB has granted CBM review, then a party's motion to stay is likely to be strengthened. The court also notes, however, that if the PTAB determines that CBM review is inappropriate for some reason, then the stay can be lifted at a relatively early time. *See id.* at *1.

### B. Stage of Discovery and the Litigation

The next factor that the court considers with respect to a stay pending CBM review is the stage of discovery or the litigation. *See Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *2 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011)). Section 18(b)(1) of the AIA specifically states that the court should consider "whether discovery is complete and whether a trial date has been set ." AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011). Trulia asserts that this litigation is still in its relatively early stages and that accordingly, this factor weighs in favor of a stay. (Mot. at 9.) Certainly, discovery is not yet complete. The parties have exchanged several rounds of written discovery requests (Schmidt Decl. ¶¶ 3-5, 9-10), produced well over a hundred thousand pages of documents (Talge Decl. ¶ 16), and retained experts (*id.* ¶ 17), but they have not taken any depositions to date (Schmidt Decl. ¶ 12). Following receipt of Trulia's motion, Zillow served Trulia with notice for a Federal Rule of Civil Procedure 30(b)(6) deposition, but it is not scheduled until later this month. (*See* Talge Decl. ¶ 15.) Thus, discovery is not complete and the deadline for discovery cut-off does not occur until March 14, 2013. (Sched. Ord. at 2.) It is typical for courts in the Western District of Washington to set trial dates early in the litigation, and the court has set a trial date here. (*Id.* at 1.) However, trial is not scheduled until August 25, 2014—more than ten months away. (*Id.*) Pursuant to section 18(b)(1) of the AIA, the court concludes that these facts weigh slightly in favor of a stay.

Zillow counters, however, that this case is on the eve of claim construction. (Resp. at 10.) The parties have exchanged infringement and non-infringement and

invalidity contentions. (Talge decl. ¶¶ 14, 18; Schmidt Decl. ¶¶ 6-7.) They have also exchanged claim terms for construction, preliminary proposed claim constructions, and extrinsic evidence (Talge Decl. ¶ 19; Schmidt Decl. ¶¶ 8, 11), and have filed their joint claim construction statement (Dkt. # 55). Nevertheless, the claim construction hearing is not scheduled until December 6, 2013, and the parties have not yet submitted their claim construction briefs. Thus, much of the work involved in claim construction analysis lies ahead for the parties and the court.

Zillow also counters that the parties have engaged in motions practice, and the court has considered Trulia's motion to dismiss based on patent-ineligible subject matter under 35 U.S.C. § 101—not once but twice. (2/15/13 Order; 9/6/13 Order.) Although this is true, the court has not ruled on the issues raised by Trulia's motion, but rather has deferred any substantive ruling until after the hearing and its order on claim construction. Thus, once again, the lion's share of the work with respect to Trulia's motion to dismiss presumably lies ahead for both the court and parties.

A stay of the litigation at this stage of discovery or even later in the proceedings pending reexamination at the PTO is not unprecedented. *See, e.g., Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 10-2151, 2012 WL 1232187, at *2 (N.D. Cal. Apr. 12, 2012) (granting stay in view of reexamination where discovery was "ongoing" and where the parties had already submitted claim construction briefs); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12–0021, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012) (granting a stay where both sides had already expended "considerable resources" in moving towards the completion of fact discovery, although no depositions

had been taken). Although the court recognizes that the parties have spent significant time and resources on discovery, discovery is not near completion, Zillow has served notice for only one deposition, no party has actually deposed a witness to date, claim construction briefing has not commenced, and deadlines for dispositive motions and the trial date are still months away. Obviously, if Trulia's motion to stay had been filed earlier in this lawsuit this factor would likely weigh more heavily in its favor. Nevertheless, in light of the significant amount of discovery, claim construction analysis, and motions practice that still lies ahead for the parties and the court prior to trial, the court finds that on balance this factor weighs in favor of granting the stay.

### C.  Undue Prejudice

The court must also consider whether a stay will inflict undue prejudice against the patentee or create a tactical advantage for the moving party. *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *2 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011)). Zillow asserts that it will suffer undue prejudice if the court stays the litigation pending CBM review. (Resp. at 5-9.) It is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice. *CCP Sys. AG v. Samsung Electronics Corp.*, No. 09–CV–4354 DMC–JAD, 2010 WL 5080570, at *3 (D.N.J. 2010) (collecting cases from various district courts). Zillow notes, however, that the court's calculus of undue prejudice is altered where the parties are direct competitors as is the case between Zillow and Trulia. The court's analysis is altered because "[w]here parties are direct competitors, a patent infringer can take market share and build brand loyalty while the case is pending, and these injuries may not be recoverable in damages

ORDER- 13

or later injunctive relief." *Pentair Water Pool and Spa, Inc. v. Haywood Indus., Inc.*, No. 11-459-D, 2012 WL 6608619, at *2 (E.D.N.C. Dec. 18, 2012); *see also Interwoven, Inc. v. Vertical Computer Sys., Inc.*, No. C 10–04645 RS, 2012 WL 761692, *3 (N.D. Cal. 2012) ("The parties' status as direct competitors also weighs against a stay because it increases the likelihood of undue prejudice.").

Many courts have found, however, that attempts by a patentee to argue undue prejudice are undermined if the patentee has elected not to pursue preliminary injunctive relief. *See Ever Win Intern. Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *BodyMedia, Inc. v. Basis Science, Inc.*, No. 12-cv-133 (GMS), 2013 WL 2462105, at *1, n. 1 (D. Del. June 06, 2013); *Hill-Rom Servs., Inc. v. Stryker Corp.*, No. 1:11–cv–1120–JMS–DKL, 2012 WL 5878087, at *2 (S.D. Ind. Nov. 20, 2012) ("[A]ttempts by a patentee to argue undue prejudice are undermined if it has elected not to pursue a preliminary injunction."); *Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*, No. 2:12–cv–02278 (WHW), 2012 WL 3061495, at *2 (D.N.J. July 25, 2012) (concluding that patentee had not shown undue prejudice because it did not seek a preliminary injunction and would "still have all of [its] legal and equitable remedies available when the stay is lifted"); *EI Du Pont De Nemours & Co. v. MacDermid Printing Solutions LLC*, No. 10–3409 (MLC), 2012 WL 2995182, at *5 (D.N.J. July 23, 2012) ("While the Court appreciates [the patentee's] concern that [the alleged infringer] will continue to sell its allegedly infringing product during the course

ORDER- 14

of the stay, thereby further eroding [the patentee's] market share and resulting in substantial loss of profits and goodwill, the Court notes that [the patentee] did not seek a preliminary injunction in this matter."). Similarly, in this case, Zillow has not sought a preliminary injunction.

The court recognizes that Zillow may have decided to forgo seeking preliminary injunctive relief for a variety of reasons that have nothing to do with its view of the merits of its case. *See TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-cv-02218-JST, 2013 WL 5289015, at *4 (N.D. Cal. Sept. 18, 2013) (rejecting notion that patentee's failure to seek preliminary injunctive relief necessarily undermined its contention of undue prejudice); *see also Avago Tech. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.,* No. 10-cv-02863-EJD, 2011 WL 3267768, at *4–5 (N.D. Cal. July 28, 2011). However, Zillow's position of undue prejudice is undermined not only by its failure to seek preliminary injunctive relief, but also by its decision to delay filing its patent infringement lawsuit for more than a year after Trulia launched the allegedly infringing feature of its website, known as the Trulia Estimate. (*See* Compl. ¶ 9 (indicating that Trulia announced its allegedly infringing website feature of automatic home valuations on September 7, 2011, although the complaint was not filed until September 12, 2012).) "Delay is a two way street . . . ." *EI Du Pont De Nemours & Co. v. MacDermid Printing Solutions LLC*, No. 10–3409 (MLC), 2012 WL 2995182, at *5 (D.N.J. July 23, 2012). Zillow's "prior lack of urgency in this matter belies its insistence that the litigation move forward with all dispatch now." *Pacific Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1067 (W.D. Wash. 2011) (citing *O'Keeffe's, Inc. v.*

*Tech. Glass Prods.*, No. C 07–03535 JF, 2007 WL 4105976, at *2 (N.D. Cal. Nov. 16, 2007) (rejecting possible prejudice argument in part because plaintiff had already waited more than a year since the issuance of its patent to commence its infringement action)).

Zillow also asserts that the timing of Trulia's request for CBM review and a stay in the litigation is suspect and appears to have been designed to gain a tactical advantage. (Resp. at 8.) The court, however, is not convinced. As Trulia points out, Zillow served its disclosure of asserted claims and infringement contentions on May 31, 2013. (Schmidt Decl. ¶ 6.) If Trulia had filed its request for CBM review prior to this time, it would have risked filing a petition that was incomplete or did not address all of the claims Zillow was asserting. Further, in light of the possibility that the litigation might end at an early stage if the court were to grant Trulia's motion to dismiss, it does not seem unreasonable that Trulia waited for the outcome of that motion before applying for CBM review. Indeed, the court did not deny Trulia's motion, but merely deferred ruling on it until after claim construction. Thus, the court accepts Trulia's contention that it did not file its request for CBM review in the hopes of gaining some tactical advantage.

In addition, the court notes that it is possible that Zillow will emerge in a strengthened position following CBM review if the PTO confirms its patent claims. *See Ever Win Intern. Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 511 n. 4 (D. Del. 2012) (citing *Pegasus Dev. Corp. v. Directv Inc.*, No. Civ.A. 00–1020–GMS, 2003 WL 21105073, at *2 (D.Del. May 14, 2003) (noting "that if, after reexamination, the plaintiffs' patents are upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain")). Nevertheless, the

1 court recognizes that, as a result of the delay inherent in any PTO reexamination or
2 review process, Zillow may suffer some prejudice. The court simply does not view the
3 possibility of prejudice here to be undue.

### D. The Burden of Litigation

The final factor that court considers is whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court. *Progressive Cas. Ins. Co.*, 2013 WL 1662952, at *2 (citing AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011)). The fourth factor was enacted to increase the likelihood that a stay would be granted. *Id.* at *8; *Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 496 ("It appears the intent of this provision was to ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations."). A stay would relieve Zillow and Trulia of the burden of litigating in multiple fora. In addition, this court would be relieved of having to expend substantial judicial resources in deciding claim construction, non-infringement, and invalidity issues before those claims are invalidated, narrowed, or refined through CMB review. This factor weighs heavily in favor of a stay pending CBM review.

In sum, the court's analysis of the four-factor test set forth in § 18(b)(1) of the AIA counsels in favor of granting Trulia's motion to stay. The court finds that all of the factors weigh in favor of granting the stay. Accordingly, the court grants Trulia's motion.

//
//

## IV. CONCLUSION

The court GRANTS Trulia's motion to stay these proceedings (Dkt. # 47) pursuant to section 18(b) of the AIA. This matter is STAYED until further order of the court. The court also ORDERS Trulia to notify the court immediately when the PTAB determines whether to institute trial on Trulia's petition for CBM review. If Trulia's petition is granted and the PTAB decides to institute trial, Trulia will inform the court concerning the trial schedule and any associated CBM review deadlines.

Dated this 4th day of October, 2013.

JAMES L. ROBART
United States District Judge